See also, D.C., 440 F.Supp. 738.

In re the DUPLAN CORPORATION and Duplan Fabrics, Inc., Debtors.

Nos. 76 B 1967, 76 B 1968.

United States District Court,
S. D. New York.

April 26, 1977.

Shea, Gould, Climenko & Casey, New York City, for Reorganization Trustee Alfred P. Slaner, by Martin I. Shelton, Lonn A. Trost, New York City, of counsel.

Marvin E. Jacob, Associate Regional Administrator, New York City, for Securities and Exchange Com'n, by Jerome Feller, Branch Chief, Erik D. Aschenbrenner, New York City, of counsel.

Zalkin, Rodin & Goodman, New York City, for Secured Institutional Lenders, by James D. Glass, New York City, of counsel.

Curtis, Mallet, Provost, Colt & Mosle, New York City, for Indenture Trustee, by John P. Campbell, Robert G. Zack, New York City, of counsel.

Bresler, Kallman, Hackmyer & Walzer, New York City, for Bradford Trust, by Arnold Hackmyer, New York City, of counsel.

Snyder, Tepper & Berlin, Boston, Mass., for R. H. Wyner Associates, Inc., by David Parish, Boston, Mass., of counsel.

In Proceedings for the Reorganization of a Corporation

KEVIN THOMAS DUFFY, District Judge.

On February 15, 1977, the Trustee of the Duplan Corporation ("Duplan") and Duplan Fabrics, Inc., debtors in reorganization proceedings under Chapter X of the Bankruptcy Act,[1] applied, by order to show cause, for authorization to sell all of the assets comprising the Shawmut Division of Duplan to R. H. Wyner Associations, Inc. ("Wyner") for the cash sum of $820,738, subject to adjustments, pursuant to an agreement, conditioned on court approval, between Duplan and Wyner. A hearing was held on March 22, and 24, 1977, after which the Securities and Exchange Commission ("SEC") and the Indenture Trustee filed papers in opposition to the application. Based on the evidence adduced at the hearing, I find that good cause has been shown for the sale of the Shawmut Division at this time and that the agreement as herein modified between Duplan and Wyner is a reasonable one.

Duplan is a diversified textile and apparel company. Its Shawmut Division, located in Stoughton, Massachusetts, is principally engaged in providing laminating services for use in shoe, apparel and textile fabric converting. It also is involved in the business of "flocking," a process which produces a suede or velvet surface appearance on fabrics.

The Shawmut Division was acquired by Duplan in 1967, from Wyner for $1,686,000, of which $1,212,000 was in cash and the balance in Duplan notes. Approximately $343,000 in notes is presently held by Wyner, who continued to run the Division after the acquisition. In 1971, Justin L. Wyner, the President and Chief Executive Officer of Shawmut, entered into an employment agreement with Duplan which provided for a one-year notice of termination, which notice apparently has never been given. It is conceded that the operations of the Division are dependent on Wyner management.

At the time of the acquisition, Shawmut principally used its laminating processes to make bonded knit fabrics, an inexpensive substitute for the then-popular double knit

---

1. The debtors originally filed petitions under Chapter XI of the Bankruptcy Act. By order of Bankruptcy Judge Galgay, dated October 5, 1976, the cases were transferred to Chapter X. On October 6, 1976, by order of this Court, a Trustee in reorganization was appointed.

fabric utilized by the apparel industry, which comprised two-thirds of its business volume. With the subsequent decline of the double knit industry, Shawmut redirected its laminating operations and marketing to servicing shoe manufacturers, particularly of sneakers and other casual wear, which now comprises 85 percent of its volume; its apparel business is presently negligible. However, increased shoe imports have had a detrimental effect on the domestic shoe industry, causing a decrease in laminating for the shoe industry. In addition, the laminating industry generally is in a state of decline; many of Shawmut's laminating competitors have gone out of business, causing the availability of surplus laminating machines which have been acquired by former customers who now maintain their own laminating operations. Shawmut's attempt in 1973 to broaden its product base by embarking into the business of flocking has proved unsuccessful.

The Division presently operates with an extremely thin customer base. Only ten customers account for 95 percent of Shawmut's business; for fiscal year 1976, only three customers were responsible for 50 percent of sales. These customers have personal relationships with Wyner, and it appears that the reorganization proceedings have had a considerable adverse impact on them.

A review of Shawmut operations reveals a steady decline since 1971, although the Division experienced a successful 1976 following a poor 1975. Overall, the years 1971 to 1976 were profitable ones; and Shawmut's operations for the first quarter of fiscal year 1977 continued to generate profit. This profit is small, however, and by comparison with the first quarter operations for fiscal year 1976, a substantial decrease is apparent. In the view of both Mr. Scharffenberger, President and Chief Executive Officer of Duplan from late 1974 until March 18, 1977, and Mr. Slaner, the Trustee in reorganization, the long-term forecast for the business portends a decline.

As early as March or April 1975, Duplan's management had decided to dispose of Shawmut, and an arrangement with Wyner in conjunction with the Majilite Corporation was contemplated. Due to the necessity of a goodwill write-off and Majilite's loss of financing, negotiations to this end were discontinued. Wyner subsequently made two separate offers for the acquisition of the Division. The first was made prior to the filing of the Chapter XI petition and was in the amount of $1,511,000 allocated in accordance with the net book value of the assets, and consisting of $818,000 in cash, a $350,000 2% note and debt cancellation of $343,000. The second was made during the Chapter XI proceedings and was a straight $510,000 cash offer.

The present agreement between Wyner and Duplan contemplates a sale of the assets comprising Shawmut for basically $820,738 in cash. The Trustee recently has informed me that, in addition, Wyner has agreed to a cancellation of the notes held by him in the face amount of $343,000. Mr. Slaner testified that the purchase price contemplated by the agreement is much more favorable to Duplan than the pre-petition offer, and Mr. Scharffenberger, who had begun the negotiations culminating in the agreement, concurred, adding that the Trustee had improved on the proposal negotiated prior to the agreement. In determining that the approximately $820,000 purchase price was a fair and reasonable one, the Trustee testified that even though he considered the transaction to be a sale of a business and not a sale of individual assets, and was only concerned with the total purchase price, he believed the allocation of the purchase price between the plant, machinery and equipment, notwithstanding the appraised value on which the allocation was based, represented a sum far in excess of the true market value of the tangible assets. This belief was based on Mr. Slaner's inspection of these assets, his familiarity with and view of the prospects of the laminating industry, and Mr. Scharffenberger's inspection and analysis of a more modern New Jersey laminating plant.

Both Mr. Slaner and Mr. Scharffenberger repeatedly emphasized the high degree of

Shawmut's dependence on Wyner management, consisting of Justin L. Wyner, his father, Rudolph H. Wyner, presently 80 years old, and his associate Raymond Franks, who is 70 years old. Justin Wyner has advised the Trustee that he intends to leave Duplan, and Mr. Slaner has been unable to induce him to stay. Mr. Slaner testified that although he was unaware of the existence of Mr. Wyner's employment agreement when the sale of Shawmut was negotiated, his subsequent knowledge of the employment contract did not change his determination that the sale is in Duplan's best interests. He further indicated that the Division was such a "personal" business that if new management was recruited to replace Wyner, the risks entailed would be substantial—if the recruit could not satisfactorily operate the business and develop the same rapport with Shawmut's customers that Wyner had, Duplan would be faced with a staggering financial loss in the context of a forced liquidation.

Section 116(3) of the Bankruptcy Act, 11 U.S.C. § 516(3), and Rule 10–607(b) of the Rules of Bankruptcy Procedure authorize the sale of assets by a Chapter X trustee for "cause shown." Both the SEC and the Indenture Trustee posit that cause for the sale has not been shown since the timing is inappropriate and consideration inadequate.

 It is true that the present Chapter X proceedings are at an early stage, and the Trustee has yet to file his report on the results of his investigation of Duplan operations and reorganization possibilities pursuant to Section 167(1) of the Bankruptcy Act, 11 U.S.C. § 567(1), and Rule 10–208 of the Rules of Bankruptcy Procedure. However, the filing of such a report is not a prerequisite to the approval of a sale of a debtor's property; the Court must only be satisfied of the existence of cause for the sale. *In re Dania Corporation,* 400 F.2d 833, 836 (5th Cir. 1968), *cert. denied,* 393 U.S. 1118, 89 S.Ct. 994, 22 L.Ed.2d 122 (1969); *In re The Sire Plan, Inc.,* 332 F.2d 497, 499 (2d Cir. 1964), *cert. denied,* 379 U.S. 909, 85 S.Ct. 206, 13 L.Ed.2d 181 (1964). The "cause" required to be shown, as made clear by these cases, need not be rooted in urgency, necessity or impending emergency but must simply be justifiable and in the best interests of the debtor. Thus, sales have been authorized where merely necessary to avoid deterioration in the value of the assets. *In re Equity Funding Corporation of America,* 492 F.2d 793 (9th Cir.), *cert. denied,* 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974); *Frank v. Drinc-O-Matic, Inc.,* 136 F.2d 906 (2d Cir. 1943).

 Moreover, the fact that Shawmut has been a profitable division would not bar approval of the sale. Although profitability is a factor to be considered in determining whether a proposed sale is appropriate and in the best interests of the debtor, it is not controlling. As the Third Circuit has noted, the Court's power of authorization under Section 116(3) "has been deemed sufficiently broad to permit the disposition of all of the debtor's income producing property, prior to the adoption of a reorganization plan." *In re Penn Central Transportation Co.,* 484 F.2d 323, 334, n.50 (3d Cir.), *cert. denied, Baker v. Morgan Guaranty Trust Co. of N.Y.,* 414 U.S. 1079, 95 S.Ct. 598, 38 L.Ed.2d 485 (1973).

It is apparent that Shawmut's profits evidence a downward trend, and the unfavorable condition of the domestic shoe industry does not portend an upswing. On April 1, 1977, President Carter rejected a report of the United States International Trade Commission recommending import relief to the domestic shoe industry in the form of higher tariffs in favor of an attempt to seek Orderly Marketing Agreements with footwear importers to restrict shoe shipments into the country. The impact of this proposal is unclear; to await a clarification may spell financial loss for Duplan in the interim.

Shawmut's narrow customer base, thin product line and dependency on Wyner management weigh heavily in favor of sale at this time. That Mr. Wyner may be obligated under an employment agreement to continue with Duplan does not necessarily mean that he will remain; he has already indicated his resolve to terminate his rela-

tionship with the company. The loss of customers whose business depends heavily on a personal association with Wyner would likely result from such a departure, and might be fatal to Shawmut's continued operations. It could be this very loss to Duplan which may account for Wyner's assuredness that the business would be profitable in his hands. Yet if Mr. Wyner were to stay, assuming his cooperation would be forthcoming, the loss of business may be just as severe, merely as a result of the impact of the Chapter X proceedings. Testimony adduced indicates that negotiations between Wyner and a General Motors supplier for automobile interior lamination are underway; but this same consideration applies to this potential customer who has indicated unwillingness to enter into this venture with a company operating in Chapter X. Additionally, the abundant availability of laminating machinery and equipment threatening vertical integration by customers and potential customers cannot be overlooked.

The favorable views of Messrs. Scharffenberger and Slaner as to the consideration for the proposed sale are detailed above. Despite the failure to couch the agreement in terms of a sale of an ongoing concern, rather than that of individual assets, the Trustee has viewed the transaction as the sale of a business and negotiated the price accordingly. He has also testified that based on his examination of the market, the appraisal value of the fixed assets is inflated and a breakdown of the price in terms of individual assets yields values in excess of the market values and the receipt of full value for receivables, notwithstanding provisions for various adjustments.

The SEC contends that the Trustee has failed to get the "best price" for the Division. Yet a comparison of the pre-petition offer and the proposed agreement of sale, including the subsequent accession to debt forgiveness, reveals no unreasonable disparity (Tr.Ex. 5), particularly since the Trustee took into consideration the nature of the instant proceedings and the not unreasonable likelihood that based on the factors already considered, a future liquidation of the Division was probable. Using his best business judgment, the Trustee has negotiated an eminently reasonable and respectable price for a justifiable sale which will enure to the benefit of Duplan.

 I accordingly find that adequate cause for the sale of Shawmut has been shown. The agreement is approved as amended and the Trustee is authorized to sell Shawmut to Wyner on the terms therein stated, including Wyner's surrender of the Duplan notes in the face value of $343,000. All liens, claims, encumbrances, security interests and other charges on Shawmut's assets will be transferred to that portion of the proceeds received by the Trustee and allocated to the respective assets.

IT IS SO ORDERED.